# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant First Class EDWARD L. CROWDER**
**United States Army, Appellant**

ARMY 20150728

Headquarters, Fires Center of Excellence and Fort Sill
Jeffery R. Nance, Military Judge
Lieutenant Colonel Katherine K. Stich, Staff Judge Advocate (pretrial)
Colonel David E. Mendelson, Staff Judge Advocate (post-trial)

For Appellant: Lieutenant Colonel Melissa R. Covolesky, JA; Captain Ryan T. Yoder, JA (on brief).

For Appellee: Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Cormac M. Smith, JA; Captain Linda Chavez, JA (on brief).

26 September 2017

----------------------------------
SUMMARY DISPOSITION
----------------------------------

Per Curiam:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of a single specification of sexual assault in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012) [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, which was mandatory. The convening authority, who under Article 60, UCMJ, had no other option, approved the sentence.

Appellant raises two assignments of error, each requiring a brief discussion but no relief. The matters personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), require no discussion.

## DISCUSSION

Appellant was charged with sexually assaulting his ex-wife ("SC") while she had stopped by his house to pick up some documents. Shortly after the assault, SC called 911 to report the offense and drove herself to the hospital. Both appellant and

SC testified, providing the military judge with irreconcilable factual descriptions of what transpired. SC described a sexual assault where she had repeatedly said "No," and tried to resist. Appellant described a completely consensual event. Appellant contended at trial that SC fabricated the assault out of vindictiveness.

## A. Admission of the 911 Call

"A military judge's decision to admit or exclude evidence is reviewed for an abuse of discretion." *United States v. Bowen*, 76 M.J. 83, 87 (C.A.A.F. 2017)(quoting *United States v. McCollum*, 58 M.J. 323, 335 (C.A.A.F. 2003)). Appellant argues on appeal that the military judge erred when he admitted an audio recording of the 911 phone call as an excited utterance. In the call, which the military judge found was made about thirty-minutes post-assault, SC states she had just been raped by appellant and was driving herself to the hospital. In the recording SC is audibly distraught and overcome with emotion. The military judge described SC's state during the phone call as "dare I say, hysteria . . . ."

Appellant argues that the military judge abused his discretion in admitting the recording. Most poignantly, appellant notes that SC first called, or attempted to call, four other persons before calling 911. We find that the military judge was well within his discretion in admitting the call.[1] *United States v. Olson*, 74 M.J. 132 (C.A.A.F. 2015).

Nonetheless, we briefly note three issues. First, a substantial portion of appellant's argument addresses facts that were introduced *after* the ruling was made. In general, we review the legal soundness of a military judge's evidentiary ruling at the time it is made. *See* Military Rule of Evidence [hereinafter Mil. R. Evid.] 103(a)(1)(2) (to preserve claim of error objecting party must "state[] the specific ground [for the objection], unless it was apparent from the context."

Second, we disagree with appellant that the military judge should have considered SC's "motive to fabricate" when ruling on the motion. "The implicit premise [of the exception] is that a person who reacts 'to a startling event or condition' while 'under the stress of excitement caused' thereby will speak truthfully because of a lack of opportunity to fabricate." *Bowen*, 76 M.J. at 88 (quoting *United States v. Jones*, 30 M.J. 127, 129 (C.M.A. 1990)); *White v. Illinois*,

---

[1] We specifically do not address whether—in this judge alone trial—an erroneous admission of the 911 recording would have been harmless. *See* Article 59(a), UCMJ. While the recording was duplicative of SC's testimony, it was separately probative because of the contemporaneous recording of her emotion and anguish.

502 U.S. 346, 357 (1992) ("a statement that qualifies for admission under a 'firmly rooted' hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability").

Finally, we note that the military judge's threshold decision to admit evidence is entirely separate from the evidentiary weight the fact-finder accords the evidence when deliberating on findings. *United States v. Martinez*, 43 C.M.R. 434 (A.C.M.R. 1970) (quoting *Kay v. United States*, 255 F.2d 476 (4th Cir. 1958)).

### B.  Factual and Legal Sufficiency

Article 66(c), UCMJ, provides that this court may "weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact."  When exercising this authority, this court does not give deference to the *decisions* of the trial court (such as a finding of guilty).  *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (A court of criminal appeals gives "no deference to the decision of the trial court" except for the "admonition . . . to take into account the fact that the trial court saw and heard the witnesses").

Appellee cites our decision in *United States v. Stanley*, 43 M.J. 671, 674 (Army Ct. Crim. App. 1995), for the proposition that "[i]n cases where witness credibility plays a critical role in the outcome of trial, this court should *hesitate* to *second-guess* the trial court's findings."  (emphasis added).  Although the quoted language is oft-repeated in government briefs, we question whether the language in *Stanley* continues to be appropriate.

First, the emphasized language in *Stanley* is troublesome.  The job of an appellate court—especially an appellate court that conducts a *de novo* review of the facts—is to "second guess" the findings of the trial court.  We should never "hesitate" in performing our review.

Second, our published decision in *Stanley* must yield to the CAAF's later decision in *Washington*.[2]  If we give "no deference" to the decisions of the trial court, then we must approach a factual sufficiency review without hesitation or presupposing what the outcome will be.  *Washington*, 57 M.J. at 399.

Third, our decision in *Stanley* relied on *United States v. Albright*, 9 U.S.C.M.A. 628, 26 C.M.R. 408 (1958) for its authority.  As the CAAF is strictly a

---

[2] As *Washington* is controlling we do not think it necessary to revisit *Stanley* in a published opinion.

court of law, *see* Article 67, UCMJ, the "deference" given by CAAF when considering witness credibility is not controlling authority for how we conduct our review as a court of law *and fact* under Article 66, UCMJ.

In sum, *Stanley* is awkwardly phrased, relied on questionable authority, and cannot be asserted in a manner inconsistent with the CAAF's decision in *Washington*. Nonetheless, we are "admoni[shed]" under *Washington* to "take into account the fact that the trial court saw and heard the witnesses." We have said "that the degree to which we 'recognize' or give deference to the trial court's ability to see and hear the witnesses will often depend on the degree to which the credibility of the witness is at issue." *United States v. Davis*, 75 M.J. 537, 546 (Army Ct. Crim. App. 2015) (citing Article 66(c), UCMJ).

Here, this case turned on the relative credibility of the witnesses. After taking into account that the trial court saw and heard the witness, we find the evidence factually sufficient.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.[3]

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court

---

[3] According to *United States v. Boone*, 49 M.J. 187 (C.A.A.F. 1998), we are required to consider post-trial submissions in determining sentence appropriateness. SC submitted matters pursuant to Article 6b, and R.C.M. 1105A, outlining the trauma she continues to suffer as a result of appellant's crime. SC's statement has not been authenticated, sworn, determined admissible under the Military Rules of Evidence, or been subject to adversarial testing. Thus, we would find application of *Boone* to a victim's clemency submission to warrant discussion. However, in this case, appellant's only sentence was to be dishonorably discharged. In *United States v. Kelly*, 2017 CCA LEXIS 453 (Army Ct. Crim. App. 5 July 2017), we determined that our review of sentence appropriateness does not extend to reviewing sentences made mandatory under Article 56.