# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellant**
v.
**Private First Class WYATT J. ALCORN**
**United States Army, Appellee**

ARMY MISC 20190313

Headquarters, 25th Infantry Division
Kenneth W. Shahan, Military Judge
Colonel Terri J. Erisman, Staff Judge Advocate

For Appellant:  Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Catharine M. Parnell, JA; Captain Allison L. Rowley, JA (on brief).

For Appellee:  Lieutenant Colonel Tiffany D. Pond, JA; Major Jack D. Einhorn, JA; Captain Benjamin A. Accinelli, JA; Captain Benjamin J. Wetherell, JA (on brief).

11 July 2019

---

MEMORANDUM OPINION AND ACTION ON APPEAL
BY THE UNITED STATES FILED PURSUANT TO
ARTICLE 62, UNIFORM CODE OF MILITARY JUSTICE

---

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Senior Judge:

The United States appeals the ruling of a military judge suppressing statements made by the accused.[1]  Presented with only the limited issue of whether the military judge erred when he found that appellee unequivocally invoked his right to silence, we AFFIRM the military judge's ruling suppressing all statements made

---

[1] We have jurisdiction over this appeal under Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862 [UCMJ].  The parties raise no jurisdictional issues to our attention nor have we independently identified any.  Unlike our reviews under Article 66, UCMJ, our review is limited solely to questions of law.

by the accused to CID on 15 August 2018 at 05:02:11 and beyond (of the videotaped interview) and the accused's written statement made thereafter.

## BACKGROUND

The accused is charged with three specifications of sexual assault in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012) [UCMJ] and one specification of providing a false official statement to a military law enforcement agent in violation of Article 107, UCMJ.[2]  The allegations of sexual assault involve the accused's civilian dependent wife.[3]

The accused was questioned by the United States Army's Criminal Investigative Command (CID) on 26 July 2018.  During the course of the interview, the accused agreed to return at a later date to undergo a polygraph examination.

On 15 August 2018, the accused returned to CID.  The voluntariness of the pre-polygraph interview or the accused's statements and participation in the polygraph examination were not challenged by the defense.

After the polygraph, the accused consented to a videotaped interview.  At about 2:34:05 of the interview, the CID agent informed the accused that he had failed the relevant questions on the polygraph examination.

At 4:54:35 of the interview, the agent began asking the accused several questions, none of which he answered.  "For the next 8 minutes, the accused is in a hunched over position with his head in his hands, not answering any questions."[4]  The following colloquy occurred during the interview:

> Q: Going back to the night of the 13th [of June 2018] what are you thinking?  What are your thoughts from that night?  What's re-playing through your mind?  Help me understand what you're thinking.

---

[2]  As the parties do not contest the military judge's findings of fact as to the underlying facts and circumstances of the interrogation, we adopt them here.

[3] Due to the limited issue presented in this interlocutory appeal, the substantive facts underlying the alleged offenses need not be discussed.

[4] The quoted language is from the military judge's findings of fact.

Q: Wyatt, you gotta talk about this stuff. I'm here to help you talk about this stuff and I can't talk about it without you.

Q: Is it something you regret? Is it something that you are sorry for? When are you going to talk to me about this stuff, quit keeping it all bottled up inside of you?

**A: I . . . I honestly don't really want to say at this point anymore.**

Q: You don't want to say at this point? What does that mean?

**A: I . . . I don't . . .**

Q: Tell the truth and be honest about it. That's all. That's the only thing I've ever asked you to do. I told you you're not going to get out of this situation unless you're one hundred percent honest about what we're here to talk about.

(emphasis added). Based on this exchange, the military judge found appellee had unequivocally invoked his right to remain silent and, therefore, suppressed any statement made by appellee after this point of the interview.

Following the military judge's ruling, the government did not move for reconsideration and instead filed a timely notice of appeal pursuant to R.C.M. 908, challenging only whether the military judged erred when he found that appellee unequivocally invoked his right to remain silent.

**LAW AND DISCUSSION**

"In an Article 62, UCMJ, appeal, this court reviews the military judge's decision directly and reviews the evidence in the light most favorable to the party which prevailed at trial." *United States v. Pugh*, 77 M.J. 1, 3 (C.A.A.F. 2017).

A military judge's decision to exclude evidence is reviewed for an abuse of discretion. *United States v. Jasper*, 72 M.J. 276, 279 (C.A.A.F. 2013). "A military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015) (internal quotation marks omitted) (citation omitted). These standards also apply to interlocutory appeals under Article 62, UCMJ. *United States v. Michael*, 66 M.J. 78, 80 (C.A.A.F. 2008); *see also United States v. Mitchell*, 76

M.J. 413, 417 (C.A.A.F. 2017). "[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) (citation omitted); *see United States v. Criswell*, 78 M.J. 136, 141 (C.A.A.F. 2018).

*Miranda v. Arizona* established a bright-line rule that when a suspect "indicates in any manner . . . that he wishes to remain silent, the interrogation must cease." 384 U.S. 436, 473-74 (1966). The Supreme Court has subsequently clarified and clearly established the law governing the invocation of one's right to remain silent. *See, e.g., Garcia v. Long*, 808 F.3d 771 (9th Cir. 2015).

First, once a suspect has consented to interrogation, the right to cut off police questioning is triggered only when the suspect unambiguously and unequivocally invokes it. *See Berghuis v. Thompkins*, 560 U.S. 370, 381-82 (2010). If an officer seeks to clarify an unambiguous request and elicits an equivocal response, the post-request statements "may not be used to cast retrospective doubt on the clarity of the initial request itself." *Smith v. Illinois*, 469 U.S. 91, 100 (1984). *Miranda* is a "bright-line prohibition" necessary to prevent authorities from "wear[ing] down the accused and persuad[ing] him to incriminate himself notwithstanding his earlier request." *Long*, 808 F.3d at 778 (citing *Smith*, 469 U.S. at 98).

Second, an ambiguous or equivocal *Miranda* invocation does not require the cessation of questioning. *Davis v. United States*, 512 U.S. 452, 459 (1994). However, once an unambiguous invocation of the right is made, authorities must "scrupulously honor" this right and immediately cease questioning. *Michigan v. Mosley*, 423 U.S. 96, 104 (1975).

The limited question of law presented to this court is whether the accused's statement, "I honestly don't really want to say at this point anymore" was an unequivocal invocation of his right to remain silent. As such, we review this question de novo. *United States v. Bresnahan*, 62 M.J. 137, 141 (C.A.A.F. 2005).

In accordance with *Smith*, we decline the government's request to consider the totality of the interrogation. 469 U.S. at 93, 100. Instead, we follow our superior court's precedent and "consider[] events immediately preceding, as well as concurrent with, the invocation" when determining whether the statement was equivocal or ambiguous." *United States v. Delarosa*, 67 M.J. 318, 324 (C.A.A.F. 2009) (citation omitted).

During the interview, the accused began a period of silence for approximately eight minutes, while the special agent asked a variety of questions. The final question prior to the invocation was "[w]hen are you going to talk to me about this stuff, quit keeping it all bottled up inside of you?" The accused sat silent for

approximately 25 seconds and then replied, "I honestly don't really want to say at this point anymore."

The government relies heavily on the fact that PFC Alcorn was largely silent throughout his interrogation and did not speak in the eight minutes leading up to his invocation. The government is correct in citing *Thompkins*, for the premise that mere silence is not an unequivocal invocation of the right to remain silent. 560 U.S. at 381. However, the Supreme Court's full opinion explains that, had the suspect made a simple statement indicating he wanted to invoke his rights, he would have adequately invoked his right to cut off questioning. *Id.* at 382 (citing *Smith*, 469 U.S. at 98). The Court's hypothetical mirrors the facts in this case. Private First Class Alcorn was silent for the majority of his post-polygraph interview. He then affirmatively spoke and said 'I honestly don't really want to say at this point anymore."

The agent testified he attempted to clarify what in his mind was an ambiguous statement. Assuming arguendo that it was ambiguous, the next question the agent asked was, "You don't want to say at this point? What does that mean?" Appellee's response, "I . . . I don't . . .", made it clear that appellee was making an unequivocal invocation of his right to remain silent and was therefore entitled to a temporary respite and a cessation of questions.

The government claims ambiguity and plausible alternate meanings to appellee's statement, but provides no insight into what those might be. As this court has observed, "equivocal" means "having different significations equally appropriate or plausible; capable of double interpretation; ambiguous." *United States v. Rittenhouse,* 62 M.J. 509, 512 (Army Ct. Crim. App. 2013) (quoting *Coleman v. Singletary*, 30 F.3d 1420, 1425-26 (11th Cir. 1994)) The authorities cited by the government define "equivocal" in line with *Rittenhouse*, but do not assist this court in determining whether PFC Alcorn's statements could be reasonably subject to differing interpretations.

During his ruling, the military judge addressed the statement by the accused:

> Despite the unusual phrasing and the use of some filler words, the statement can be distilled down to the phrase "I don't want to say any more." The word "honestly" does not create ambiguity; if anything it adds strength to the accused's invocation. The phrase "at this point" means "now" and likewise only serves to strengthen the accused's assertion.

5

The military judge then applied the definition of "equivocal" recognized by this court in *Rittenhouse*. 62 M.J. at 512. First considering the plain language of the statement, the military judge could "think of no other signification that could be as equally plausible as the accused signifying that he does not want to make a statement." We agree. We further agree that the agent, and not the accused, continued the questioning without respite.

As such, we find that the military judge applied the correct law to the question at hand. The military judge concluded, pursuant to *Rittenhouse*, that the statement was unequivocal and not capable of double interpretation. 62 M.J. at 512. Considering the "events immediately preceding, as well as concurrent with, the invocation" by appellant, the CID agent should have recognized appellant's statement as an unequivocal request to remain silent. *Delarosa*, 67 M.J. at 324. As such, we are bound to "scrupulously honor" the invocation of the constitutional right to silence. *See United States v. Watkins*, 34 M.J. 344, 346 (C.M.A. 1992) (citing *Michigan v. Mosley*, 423 U.S. 96 (1975)).

Having found that the military judge correctly applied the law in determining that PFC Alcorn's statement was unequivocal, we further find that he did not abuse his discretion in suppressing the portions of the videotaped statement from the moment of invocation of his right to silence and the subsequent written statement that was obtained contemporaneously in the interrogation.

## CONCLUSION

The government's appeal pursuant to Article 62, UCMJ, is DENIED. We AFFIRM the military judge's ruling suppressing all statements made by the accused to CID on 15 August 2018 at 05:02:11 and beyond (of the videotaped interview) and the accused's written statement made thereafter.

The record will be returned to the military judge for action not inconsistent with this opinion and R.C.M. 908(c)(3).

Judge HAGLER and Judge FLEMING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

6